IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ZAFAR CHUGHTAI,** *et al.*  <br><br>          *Plaintiffs,*  <br>     **v.**  <br><br>**BID 4 ASSETS, INC.**  <br><br>          *Defendant.* | **Case No. 2:23-cv-02518-JDW** |

**MEMORANDUM**

When Zafar Chughtai and B&E Real Estate Inc.[1] purchased a property at a sheriff's sale on a website that Bid 4 Assets, Inc.[2] ran, they claim that they encountered a chamber of horrors because the property was subject to a senior lien. But fans of the horror genre know an important mantra that applies to this case: "Caveat emptor, Mother. Let the buyer beware." THE BIRDS (Universal Pictures 1963).[3] B&E bought the property without a warranty, subject to Terms of Service with BFA that disclaimed a warranty, and subject to Pennsylvania law that holds that sheriffs' sales occur without a warranty. Against that backdrop, I conclude that B&E cannot maintain a claim against BFA for failing to disclose that someone held a lien on the property. I will therefore dismiss this case with prejudice.

---

[1] I will refer to Mr. Chughtai and B&E Real Estate together as "B&E."
[2] I will refer to Bid 4 Assets as "BFA."
[3] Residents of the Eastern District of Pennsylvania might be surprised to learn that "The Birds" is a movie title, and not just a reference to a sometimes-exhilarating, often-heartbreaking football team that no longer employs Jason Kelce.

## I.   BACKGROUND

### A.   B&E's Sheriff Sale Purchase

In September 2018, B&E began purchasing properties at Pennsylvania sheriffs' sales. At some point, BFA's online auction website became the venue for the sheriffs' sale auctions. B&E registered and created an account with BFA. To do so, B&E had to agree to BFA's Terms of Service.

The Terms of Service provide that they "comprise a contract between a Seller and the winning Bidder in any completed auction." (ECF No. 15, Ex. A at § 3.3(a).) They also explain that all properties on the BFA website are "listed and sold on an 'as is' 'where is' basis, unless otherwise indicated by the Seller on the auction listing." (*Id.* at § 3.3(b).) The Terms of Service reiterate and emphasize that point in Section 5.1: "THE SITE IS PROVIDED ON AN 'AS IS' AND 'AS AVAILABLE' BASIS. BID4ASSETS EXPRESSLY DISCLAIMS ANY AND ALL WARRANTIES OF ANY KIND …." (*Id.* at § 5.1 (emphasis in original).) The Terms of Service also state that all "purchases and sales of Assets and use of the Site by Members shall be conducted in compliance with applicable law" and that "[p]urchases made on the Site are entirely without recourse to Bid4Assets." (*Id.* at § 3.3(e).) The Terms of Service include a Maryland choice-of-law provision. (*See id.* at § 5.9.) Finally, the Terms of Service contain a fee-shifting provision in which users like B&E agree "that they shall be responsible for this agreement, including reasonable attorney's fees and court costs," including "all costs associated with the collection of fees due to" BFA. (*Id.* at § 5.7.)

In May 2023, B&E purchased a property at 2129 Barnwood Circle in Norristown, Pennsylvania (the "Property") at a sheriff's sale on the BFA website. After purchasing the Property, B&E learned that Bank of New York held a senior lien on the Property and claimed B&E's purchase was defective. B&E didn't know about any lien on the Property when it placed its bid and would not have bid on the Property had it known.

### B.     Procedural History

On June 30, 2023, B&E sued BFA, asserting that BFA's failure to warn of the lien on the Property injured it. It asserted six counts: (I) promissory estoppel and detrimental reliance; (II) breach of contract and implied covenant of good faith; (III) misrepresentation; (IV) punitive damages; (V) intentional infliction of emotional distress and tortious interference; and (VI) violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law. On November 22, 2023, BFA moved to dismiss and to recover its attorneys' fees under the fee-shifting provision of the Terms of Service.

On November 8, 2023, BFA served on B&E a Motion seeking sanctions pursuant to Fed. R. Civ. P. 11(c)(2). BFA filed its Motion on November 30, 2023. B&E reports in its Opposition to the sanctions motion that it withdrew Counts IV, V, and VI of its Complaint on December 7, 2023. Both BFA's Motion to Dismiss and its Motion for Sanctions are ripe for disposition.

## II. MOTION TO DISMISS

### A. Legal Standard

A district court may dismiss a complaint where the plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "On a motion to dismiss, a court must 'accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff.'" *Doe v. Princeton University*, 30 F.4th 335, 340 (3d Cir. 2022) (citation omitted). A court may also consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). To survive, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009) (internal quotation omitted) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted).

### B. Analysis

#### 1. Breach of contract/breach of implied covenant of good faith

##### a. Plausibility of claims

Federal courts sitting in diversity apply the choice of law principles of the forum state. *See Pac. Employers Ins. Co. v. Global Reinsurance Corp. of Am.*, 693 F.3d 417, 432

4

(3d Cir. 2012). Pennsylvania courts give effect to a contractual choice-of-law provision. *See Smith v. Commonwealth Nat. Bank*, 557 A.2d 775, 777 (Pa. Super. Ct. 1989). The Terms of Service select Maryland law, and the Parties do not dispute that Maryland law applies to the breach of contract claim. I will therefore apply it. To prevail on a breach of contract claim, Maryland requires the plaintiff prove the defendant "owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001).

There is no provision in the Terms of Service that imposes an obligation on BFA to notify potential buyers of encumbrances on the title of a property up for auction. To the contrary, the Terms of Service make clear that "[b]uyers are required to conduct any research or due diligence of an Asset prior to making a bid" and that all properties are "listed and sold on an 'as is' 'where is' basis, unless otherwise indicated by the Seller on the auction listing." (ECF No. 15, Exhibit A, § 3.3.) And it reiterates that point in highlighted language. (*See id.* at § 5.1.)

When a property in Pennsylvania is sold through a sheriff's sale, the sale is "without warranty," meaning that the "purchaser takes all the risk, and the rule of *caveat emptor* applies in all its force." *Irwin Union Nat'l Bank & Trust Co. v. Famous*, 4 A.3d 1099, 1104 (Pa. Super. Ct. 2010) (emphasis in original). Under Maryland law, the "laws subsisting at the time of the making of a contract enter into and form a part thereof as if expressly referred to or incorporated in its terms." *Dennis v. Mayor and City Council of Rockville*,

5

406 A.2d 284, 287 (Md. 1979). Because Pennsylvania law governs the sheriff's sale in Pennsylvania, Maryland law dictates that the contract incorporates that aspect of Pennsylvania law. Thus, the contract between B&E and BFA is without warranty and shifts the risk to B&E.

Because no provision of the Terms of Service imposes a relevant duty, BFA cannot have breached an express term of the contract. To the extent that B&E alleges a breach of the implied duty of good faith and fair dealing, that claim also must fail. Maryland does not recognize an independent cause of action for breach of implied covenant of good faith, viewing it instead as an element of a breach of contract claim. *See Mount Vernon Properties, LLC v. Branch Banking and Trust Co.*, 907 A.3d 373, 381 (Md. Ct. Spec. App. 2006). The duty "prohibits one party to a contract from acting in such a manner as to prevent the other party from performing obligations under the contract." *Parker v. Columbia Bank*, 604 A.2d 521, 531 (Md. Ct. Spec. App. 1992). That is, the duty requires a party to a contract to exercise good faith in performing its contractual duties, but it does not require affirmative acts that the contract does not specify. *See Blondell v. Littlepage*, 991 A.2d 80, 90 (Md. 2010). Because the Terms of Service do not impose an affirmative duty of disclosure, the implied duty of good faith cannot be the basis for such a duty.

B&E argues that the warranty disclaimer in the Terms of Service is not sufficiently prominent and is therefore not effective. There are several problems with that argument. *First*, it is wrong factually. Although Section 3.3 of the Terms of Service includes the

6

warranty disclaimer in normal text, Section 5.1 includes the same language in all caps in order to emphasize it. And, even if I only focused on Section 3.3's normal-font disclaimer, B&E does not point to any case under Maryland law (or any other state's law) that required BFA to display the warranty disclaimer in the Terms of Service more prominently. Sometimes courts require a contractual waiver of rights to be extra-prominent. *See, e.g.*, *First Union Nat. Bank v. United States*, 164 F. Supp. 2d 660, 663 (E.D. Pa. 2001) (requiring jury trial waiver provisions to be conspicuous). But that's not what's at issue in this case. In the absence of some determination that the warranty disclaimer required a more prominent disclosure, I have no basis to ignore it.

*Second*, even if B&E's arguments were correct, it would not establish that the Terms of Service impose any affirmative duty of disclosure on BFA. And there must be an affirmative duty for BFA to have breached the agreement. *Third*, B&E's argument doesn't address the fact that the operative law imposes the duty of investigation on the buyer at a sheriff's sale and disclaims any warranty on the property.

### b. Attorneys' fees

The Terms of Service only permit the recovery of attorneys' fees for costs "to enforce this agreement," including "costs associated with the collection of fees due to" BFA. (ECF No. 15, Ex. A at § 5.7(a).) By its terms, this provision does not apply to this case because this is not an action to enforce the Terms of Service, such as to collect fees that

7

B&E might owe to BFA. It is instead a suit challenging the Terms of Service. Therefore, I will not award attorneys' fees under the contract.

### 2. Promissory estoppel

BFA argues that Maryland law applies to the promissory estoppel claim, and B&E does not disagree. I'm not sure that's right because the promissory estoppel claim rests on the idea that there's not a contract between the parties, and the choice-of-law provision in the Terms of Service is a contractual provision, so it's a bit illogical to apply it to a claim premised on the absence of a contract. Nonetheless, where the parties to a case agree that a state's law applies, and that state has some interest in the outcome of the case, a district court need not wade into the dispute. *See Schiavone Const. Co. v. Time, Inc.*, 735 F.2d 94, 96 (3d Cir. 1984). Maryland law has an interest in the outcome of this case because BFA is a Maryland entity. So, I will apply Maryland law.

In Maryland, promissory estoppel is considered a "quasi-contract" claim, and a plaintiff cannot raise such a claim "when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests." *Ver Brycke v. Ver Brycke*, 843 A.2d 758, 772 n.9 (Md. 2004) (citation omitted). The Terms of Service are a contract between the Parties, so there can't be a promissory estoppel claim. B&E's only argument is that it can maintain the claim "independent of the contract claims." (ECF No. 21-2 at 3.) But it offers no support for that argument, and I see no basis for an independent promissory estoppel claim when there's an extant contract.

### 3. Misrepresentation

BFA argues that Pennsylvania law applies to the misrepresentation claim, and B&E does not disagree. And that makes sense because Pennsylvania does not apply a contract's choice of law provision to tort claims between parties unless "the fair import of the provision embraces all aspects of the legal relationship." *Broederdorf v. Bacheler*, 129 F.Supp.3d. 182, 191 (E.D. Pa 2015). Without a dispute, I will apply Pennsylvania law. *See Schiavone Const.*, 735 F.2d at 96.

In the Complaint, B&E calls its third cause of action "misrepresentation." (ECF No. 1 at ¶ 7.) The misrepresentation occurred from "not giving proper notice" about the title to the Property. (*Id.* at ¶ 30.) Pennsylvania law recognizes two distinct torts for non-disclosure. One is fraudulent concealment; the other is fraudulent non-disclosure. *See Youndt v. First Nat. Bank of Port Allegheny*, 868 A.2d 539, 549-50 (Pa. Super. Ct. 2005). A fraudulent concealment claim requires "[o]ne party to a transaction [to] intentionally prevent[] the other from acquiring material information." *Id.* at 549 (quoting Restatement (Second) of Torts § 550). That doesn't seem to be what B&E alleges. It does not suggest that BFA prevented it from learning that there was an unsatisfied mortgage on the Property.

A claim of fraudulent disclosure arises if one "fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction ...." *Id.* at 550 (quoting Restatement (Second) of Torts § 551). Under

Section 551, a party to a business transaction has a duty of disclosure only in one of five scenarios: (a) he knows something that the other party is entitled to know because of a fiduciary or similar relation of trust and confidence; (b) he knows something that would prevent a partial or misleading statement from being misleading; (c) he learns something that would make untrue or misleading a previous representation; (d) if he makes a false representation without the expectation that someone will act on it but later learns that someone will act on that representation; and (e) he knows that someone is about to enter into a transaction based on a mistake about a basic fact and the relationship between the or the customs of the trade would reasonably expect a disclosure. B&E has not pled facts to establish any of those duties.

It has not pled that BFA had any knowledge that B&E's intent or understanding at any time. It also has not pled that BFA learned something that made a prior representation false. Without those facts, there is no plausible claim that BFA had a duty to speak, so there can't be a viable fraudulent disclosure claim.

### III. MOTION FOR SANCTIONS

#### A. Legal Standard

Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers that they file with the court are "well grounded in fact, legally tenable, and not interposed for any improper purpose." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). The "standard for testing

conduct under Rule 11 is reasonableness under the circumstances." *Teamsters Local Union No. 430 v. Cement Exp., Inc.*, 841 F.2d 66, 68 (3d Cir. 1988). To comply with these requirements, counsel must conduct a "reasonable investigation of the facts and a normally competent level of legal research to support the presentation." *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 94 (3d Cir. 1988) (quotation omitted). In applying this standard, a judge must avoid using the wisdom hindsight and should test the signer's conduct by what was reasonable at the time of submission. *See CTY Imports & Exports v. Nigerian Petroleum Corp.*, 951 F.2d 573, 578 (3d Cir. 1991).

### B.    Analysis

Rule 11 provides that a party seeking sanctions must not present its motion if "the challenged paper, claim, defense, contention, or denial is withdrawn or appropriate corrected within 21 days after service" of the motion. Fed. R. Civ. P. 11(c)(2). B&E withdrew Counts IV, V, and VI of the Complaint after BFA served its motion. Admittedly, it didn't do so in the 21 days that the Rule specifies, but it did so without requiring any further proceedings. Certainly, B&E should have acted in a timelier way, but it did ultimately serve the Rule's purpose—extinguishing meritless claims. I therefore won't impose sanctions over a slightly delayed withdrawal of claims.

As for the remaining claims, they are deficient, and I will dismiss them. But BFA has not demonstrated that B&E acted unreasonably when it filed the claims. B&E focused on Section 3.3, and not Section 5.1, when it argued that the warranty disclaimer should have

been more prominent. But so did BFA. In fact, when BFA gave B&E the chance to withdraw the claims, it only pointed to Section 3.3, so I can forgive B&E's failure to identify Section 5.1 as a basis to withdraw the claims. And while it's true that B&E didn't consider the incorporation of Pennsylvania law on warranty disclaimers, that's not enough to render the Complaint objectively unreasonable. It's not ideal, and a plaintiff (or plaintiff's lawyer acting on a contingency) takes a significant risk by investing time and money pursuing such a claim. But Courts should not apply Rule 11 "to inhibit imaginative legal or factual approaches to applicable law ...." *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483 (3d Cir. 1987). On the record before me, I conclude that B&E's claims do not go so far beyond the pale as to justify Rule 11 sanctions. The punishment that B&E will suffer from its deficient claims is the lost time and money that it put into its lawsuit.

## IV.   CONCLUSION

B&E has no claim against BFA, and I will dismiss the Complaint. I will not award attorneys' fees, either as a matter of contract or under Rule 11, but I will encourage B&E and its counsel to be more careful before filing cases in the future.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
HON. JOSHUA D. WOLSON
United States District Judge

March 11, 2024